Edward M. O’Gorman, J.
This is a motion to set aside the verdict of a jury in favor of the plaintiffs following the completion of the trial of the above-entitled action. The evidence establishes that the plaintiff workman, an electrician by trade, was working without pay in the construction of a storage building on premises owned by the defendant Warwick Valley Civic and Social Club, a civic organization. He was injured when the rung of a ladder owned by and furnished to him by the defendant gave way, causing him to fall to the ground, sustaining severe and disabling personal injuries.
The exceptions to the court’s charge and the other motions by the defendant raise the single issue as to whether the plaintiff, under the circumstances of this accident, was entitled to the protection afforded by section 240 of the Labor Law. The pertinent portion of the court’s charge in this connection, charging the elements of section 240, was as follows: "If the plaintiff was permitted or suffered by the defendant Warwick Valley Civic and Social Club to work on the installation of a roof on the storage building which was in the process of construction on June 3, 1973, and if the defendant breached its statutory duty to furnish a ladder which gave proper protection to the plaintiff, and if this failure was the cause of the plaintiff’s injuries, the statute imposes liability upon the defendant corporation, whether or not the plaintiff was guilty of negligence contributing to his injury.”
Defendant contends that because the plaintiff was not being paid for his work while using the ladder, he is to be denied the protection of the statute.
It should be noted at the outset that the Legislature, in its 1969 amendment to section 240 of the Labor Law (L 1969, ch 1108, § 1), eliminated any reference to employer or employee in that section. Both of these terms are defined by the Legislature as involving work done for hire (see definitions, Labor Law, §2, subds 5, 6). Instead, the Legislature used the term "employed”, which it defined in the terms used in the court’s charge, "permitted or suffered to work” (§ 2, subd 7).
This 1969 amendment made a radical change in section 240 as it then existed. It eliminated from the description of the *579 persons to whom the section formerly applied the terms "a person employing” and substituted "all contractors, owners and their agents”. It added the owner, without qualification, as a person subject to the statutory liability imposed by the section. There is no requirement anywhere that the owner must have an employer-employee relationship with the injured workman. Indeed, in most construction activity he does not have such a relationship. By this statute, he is made responsible to promote the safety of workmen using ladders. As was stated in the legislative memorandum: "Labor Law §240; § 241, repeals, new. This bill places ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor.” (NY Legis Annual, 1969, p 407).
As the court stated in Rocha v State of New York (77 Misc 2d 290, affd 45 AD2d 633, 635): "A mere reading of the new language reveals the change to be a substantial one, for it imposes liability on a new category, i.e., an owner. Prior to the change, an owner was subject to liability only if he was also an employer or one directing the worker to perform his labor.”
It is important to note that this section of the present Labor Law had an origin prior to and separate from the Labor Law itself. It first appeared among the laws of this State as a statute with a criminal sanction entitled "An act for the protection of life and limb” (L 1885, ch 314). The 1885 statute was designed to afford protection "to the life and limb of any person” employed or engaged in the erection of any building to whom a ladder, among other things, had been furnished by a person directing the performance of the labor. The protection was not limited to employees. This statute was later incorporated into the Labor Laws, enacted in 1897, as a part of section 18 of the Labor Law and appears today, after modification, in its present form in section 240.
The courts have stated that section 18 of the Labor Law was to be "liberally construed to accomplish its beneficent purpose” (see Bohnhoff v Fischer, 210 NY 172, 174; Quigley v Thatcher, 207 NY 66).
While many provisions of the Labor Law set safety standards for construction work performed by contractors and their employees, many of its sections are not so limited. The Labor Law sets safety standards for the protection of persons "lawfully frequenting” construction sites (§ 241, subd 6; § 200, *580 subd 1); for the protection of aerial performers from "risk to themselves and others” (§ 202-a, subd 1); for the protection from personal injuries of "persons attending carnivals, fairs and amusement parks” (§ 202-b); for the protection of "the public in the use and operation of ski tows and other passenger tramways” (§ 202-c); and for the protection of persons lawfully using "coin-operated machines” (§ 202-d).
It is clear from the foregoing sections that the benefit of the safety standards set by the Labor Law is not limited solely to paid employees of an owner or contractor.
The fact that at the time of the 1969 amendment to section 240 the compiler of an edition of the statutes failed to change the original caption should have no bearing on the construction of the amended section (see McKinney’s Cons Laws of NY, Book 1, Statutes, § 130; People v Hartwell, 166 NY 361, 365; People v Fishman, 64 Misc 256). Indeed, the official legislative caption for the original section was "An act for the protection of life and limb” (supra).
It should be further noted that section 240 of the Labor Law, unlike the provisions of the former Child Labor Law (now Labor Law, §§ 130, 131, 132), is not limited to mercantile pursuits. In Ludwig v Lowe (29 AD2d 267) cited by the defendant, the Appellate Division indicated that it was prepared to resolve the issue, in the case there presented, in favor of the minor plaintiff who was working without pay, and that it did not do so because the defendant in that case was not engaged in a "mercantile pursuit”. The court stated (p 270): "It is the lack of the commercial aspect of the defendant’s activity herein which in our view takes this case outside the purview of the Labor Law. We can reconcile all other problems other than the fact that the defendant was not engaged in any commercial endeavor. Child labor legislation contemplates only those activities in which children are used for profit.”
There is no such limitation limiting the application of section 240 of the Labor Law to those engaged in mercantile pursuits.
The case of Cann v Denning (216 NYS2d 164), relied on by the defendant, is distinguishable in many respects from the present case. It should be first noted that it was decided prior to the 1969 amendment of section 240 of the Labor Law and prior to the 1969 and 1974 amendments of section 241 of the Labor Law. The court found, under the circumstances in that *581 case, that the provisions of the Labor Law relating to a safe place to work (§ 241) and to scaffolding (§ 240) were not applicable. Indeed, this was obvious inasmuch as the plaintiff in the Cann case (supra), was injured when he tripped on a nail in a sheathing board which had allegedly been driven by the defendant. The defendant owner, himself not a carpenter, was acting pursuant to the advice of and with the help of the plaintiff, a professional carpenter. No ladder or scaffolding of any kind was involved in the accident. It is clear that the reason the court took occasion to point out that the defendant was a volunteer was in order to apply the then applicable distinctions in the common law duty of care owed to various classes of persons, the court stating (p 165): "As a volunteer, the plaintiff was entitled to protection only against gross negligence, willfulness or wantonness”.
The court’s reference in the brief opinion in Cann (supra), to the statutory definition of an employee seems, therefore, not only unnecessary but also inappropriate, in view of the language of the section with which the court was dealing (§ 200). This section not only does not use the term "employee” or "employer” (the statutory definitions for which have been set forth supra), but also affords, by its terms, protection to persons not only suffered and permitted to work therein, but also to all persons lawfully frequenting such places (§ 200, subd 1). In this connection, it should be observed also that section 200 applies to "places”, and reference must be had to other sections of the Labor Law to determine to which places the section applies.
There seems to be no consideration of policy which requires a departure from the language of section 240 in this case. It is not reasonable to suppose that the Legislature, having declared its aim to secure the safety of workmen and others in the vicinity of construction operations, intended to extend the protection of its statutory safeguards to a workman who is being paid for his labor, but to withdraw it from another workman, doing the same work under the same hazardous conditions, solely because he was not to be paid for his labor. Lack of payment does not make his safety any less a desirable legislative objective or his injury any less of an injury to the public welfare which the Legislature is bound to secure.
The Legislature, as it did in the case of section 130 of the Labor Law, could readily have limited the application of section 240 to those engaged in mercantile pursuits. It did not *582 do so. It is therefore also not reasonable to conclude that the Legislature intended that building operations undertaken by business organizations should be required to meet safety standards to protect workmen and others in the vicinity, but that similar projects, equally hazardous to workmen and others in the vicinity, might be undertaken by nonprofit organizations without regard to safety standards.
For the foregoing reasons, the motion to set aside the jury verdict herein will be denied.